ANGIER L. GOODWIN, trustee in bankruptcy, *vs.* COSMOPOLI-
TAN TRUST. COMPANY & another.

Suffolk.    November 20, 1923. — February 28, 1924.

Present: RUGG, C.J., BRALEY, PIERCE, & CARROLL, JJ.

*Mortgage,* Trust mortgage.   *Trust,* Construction of instrument creating
trust.   *Equity Pleading and Practice,* Master: findings, exceptions to
report.

On appeals by a plaintiff in a suit in equity from a decree overruling ex-
ceptions to a master's report and confirming the report, and from a
final decree dismissing the suit, an exception to the report based upon
an alleged erroneous admission of evidence by the master cannot be
sustained where, after notice by the master that he had finally settled
the draft of the report, no objection in writing to the ruling was filed as
required by Equity Rule 31, although the master in his report set out
the evidence in detail and stated that it was admitted subject to an
objection by the plaintiff.

In a suit in equity by the trustee in bankruptcy of a corporation to enjoin
a trust company from foreclosing a mortgage, it appeared that, at a
time when a number of corporations were heavily indebted to the trust
company, the plaintiff's corporation was organized at the instance of
the trust company to hold the assets and assume the obligations of the
other corporations in an amount something less than $300,000; that the
plaintiff's corporation issued stock in exchange for the assets of the other
corporations and that there was an issue of bonds in the sum of $300,000
to refund the indebtedness which the plaintiff's corporation had assumed
and taken over from the other corporations.   The bonds were secured
by the mortgage in question, which was to the trust company as trustee
and conveyed in mortgage and in trust all of the assets of the plaintiff's
corporation.   It was found that the mortgage was given and the bonds
were issued in pursuance of a plan to secure the trust company as the
largest creditor by far of the plaintiff's corporation.   "While the arrange-
ment was somewhat informal, it was in general understood and intended
that the trust company should receive these bonds, disposing of them
to the general public, if that was possible, and applying the proceeds,
so far as may be, in satisfaction of its claim, and that pending a sale of
the bonds they should be regarded as held by the trust company as a
form of security for the payment of the indebtedness " of the plaintiff's
corporation to the trust company.   *Held,* that

(1) There was nothing to support a contention of the plaintiff that
the scheme disclosed was " devised solely for the purpose of hindering
and delaying creditors and lulling into a sense of security those creditors
who would have been warned and aroused into immediate action by
the recording of a mortgage of all the property of a debtor, if framed in
a form which openly disclosed the purpose now claimed by the
defendant; "

(2) The defendant as against the plaintiff was entitled to hold and enforce the mortgage;

(3) A final decree dismissing the bill was warranted.

BILL IN EQUITY, filed in the Superior Court on April 12, 1922, and afterwards removed to the Supreme Judicial Court, by the trustee in bankruptcy of New England Lumber Company to enjoin the defendant from foreclosing a mortgage given to it as a trustee to secure the payment of an issue of bonds in the amount of $300,000.

The suit was referred to a master. Material facts found by the master are described in the opinion. The master in his report recited by question and answer evidence which was admitted by him subject to exceptions by the plaintiff, being testimony of one Lester and of one Bills. The plaintiff filed no objection to the report under Equity Rule 31. Fourteen days after the filing of the report of the master, he filed an exception to the report " for the reasons set forth in objection," in that the testimony recited by the master as above described " was admitted by the master against the objection of the plaintiff and his exception was then duly saved."

The suit was heard upon the master's report by *Crosby*, J., by whose order there were entered an interlocutory decree overruling the plaintiff's exceptions and confirming the master's report, and a final decree dismissing the bill. From both decrees the plaintiff appealed.

*C. S. Hill*, for the plaintiff.

*S. M. Child*, for the defendant.

PIERCE, J. This is a suit in equity brought in the Superior Court and removed, on motion of the defendants, to the Supreme Judicial Court under the provisions of G. L. c. 214, § 32.

The bill was brought by the trustee in bankruptcy of the estate of the New England Lumber Company; it alleges that the defendant commissioner has in his possession a mortgage of real and personal property, dated May 5, 1919, given by the New England Lumber Company to the Cosmopolitan Trust Company as trustee for the payment of an issue of bonds to the amount of $300,000; that no delivery

was ever made of said mortgage to the Cosmopolitan Trust Company; that none of the bonds was ever sold by any one; that no money or other consideration was ever received by the New England Lumber Company for said mortgage or for said bonds; that nothing was further done with respect to said mortgage by the New England Lumber Company or the Cosmopolitan Trust Company; that the Cosmopolitan Trust Company became insolvent and possession of it was taken by the defendant commissioner on September 25, 1920; that on November 21, 1921, the defendant commissioner of banks gave written notice to the plaintiff that it was the intention of the Cosmopolitan Trust Company to begin foreclosure proceedings of said mortgage; and it prays that an injunction issue restraining the defendants, their agents and servants, from foreclosing or taking steps to foreclose the above described mortgage; that a decree may be entered to the effect that said mortgage is invalid and void as against this plaintiff; and that the defendants be ordered to cancel and discharge the same of record.

The answer admits that the plaintiff is trustee in bankruptcy of the New England Lumber Company; admits for the purpose of this suit the insolvency of the Cosmopolitan Trust Company; admits that on November 21, 1921, written notice was given to the plaintiff that it was the intention of the Cosmopolitan Trust Company to begin foreclosure proceedings of said mortgage; and admits that the New England Lumber Company on May 3, 1919, was indebted to the Cosmopolitan Trust Company in large sums of money which it could not liquidate. The defendants deny all other of the plaintiff's charges and further answering say " that said mortgage of $300,000, and the bonds accompanying the same, were duly delivered to the defendant, the Cosmopolitan Trust Company, for value; that an attempt was made to sell said bonds, but owing to market conditions, the same could not be sold, — but if sold, that the proceeds were to be the property of the defendant Cosmopolitan Trust Company, to be applied to the indebtedness of the New England Lumber Company to the Cosmopolitan Trust Company; that on September 25, 1920, the New England Lumber

Company was indebted to the Cosmopolitan Trust Company in excess of $740,000, on promissory notes, unsecured except by said mortgage, of which the said New England Lumber Company received the cash represented by the discount of said notes by the defendant the Cosmopolitan Trust Company."

The case was referred to a master under the usual rule. The report discloses that the New England Lumber Company was organized at the instance of the Cosmopolitan Trust Company, to hold the assets and to assume the obligations of four or five corporations, which corporations were indebted to the Cosmopolitan Trust Company in an amount something less than $300,000. The method adopted in the execution of the plan involved the issue of stock of the par value of $299,700 in exchange for the assets of these corporations; and the issuance of bonds in the amount of $300,000, to refund the indebtedness and obligations which the New England Lumber Company had assumed and taken over from other companies, secured by a mortgage of all its property to the Cosmopolitan Trust Company as trustee. The mortgage is in the ordinary form of a mortgage to secure a bond issue, and provides in the twelfth clause that after a foreclosure sale " any balance shall be paid to the mortgagor and its successors and assigns." There is annexed to the mortgage an affidavit of the president and treasurer of the New England Lumber Company and of the Cosmopolitan Trust Company " that the above mortgage is made in good faith to secure the amount named therein and without any design to hinder or delay the creditors of the New England Lumber Company, the mortgagor."

At the hearing before the master, against the objection of the plaintiff, one Lester, secretary and director of the New England Lumber Company, testified that the purpose of the issue of the bonds was to take up notes of the New England Lumber Company at the Cosmopolitan Trust Company. And one Bills, president and director of the New England Lumber Company, testified in substance that one Mitchell, president of the Cosmopolitan Trust Company, wanted security for the unsecured notes of the companies which

were to be consolidated with the New England Lumber Company; that it was agreed that bonds secured by a general mortgage be placed, and that the proceeds received from the sale of these bonds were to be paid to the Cosmopolitan Trust Company and applied on the notes, the bonds to be held by the Cosmopolitan Trust Company until the notes were paid, as security for these notes.

With this evidence the master was fully justified on all the facts reported in finding, as he did, " that the mortgage was given and the bonds were issued in pursuance of a plan to secure the Cosmopolitan Trust Company, as the largest creditor by far of the lumber company. While the arrangement was somewhat informal, it was in general understood and intended that the trust company should receive these bonds, disposing of them to the general public, if that was possible, and applying the proceeds, so far as may be, in satisfaction of its claim, and that pending a sale of the bonds they should be regarded as held by the Cosmopolitan Trust Company as a form of security for the payment of the indebtedness upon the notes of the lumber company to the trust company."

The case is before this court on appeal from an interlocutory decree overruling the plaintiff's exceptions and confirming the report of the master; and also from the final decree dismissing the plaintiff's bill.

The exception of the plaintiff, taken to the admission of the evidence of Lester and Bills on the ground that such evidence enlarged, altered and varied the terms of the mortgage, was overruled rightly. The master states he prepared a draft report, had a hearing upon it, made certain changes in it in consequence of suggestions of counsel at the hearing, sent to counsel copies of draft report and final report, with a notification that he " was prepared to receive within the time fixed by law, such objections to this report as they might desire to file with me," and " received, however, no objection to this report." Unless application is made and relief is granted from the observance of Equity Rules 31 and 32, exceptions to a master's report cannot be considered unless they are founded on objections in writing to the report after

the draft of it has been settled and such objections are appended to the report. *Smedley* v. *Johnson*, 196 Mass. 316. *Capen* v. *Capen*, 234 Mass. 355, 362. *Barbrick* v. *Huddell*, 245 Mass. 428, 438.

There is nothing in the evidence that supports the claim of the plaintiff that the scheme disclosed was " devised solely for the purpose of hindering and delaying creditors and lulling into a sense of security those creditors who would have been warned and aroused into immediate action by the recording of a mortgage of all the property of a debtor, if framed in a form which openly disclosed the purpose now claimed by the defendant."

It results that the defendants as against the plaintiff are entitled to hold and enforce the mortgage, and that the interlocutory and final decrees must be affirmed.

*Ordered accordingly.*